Robert **SHERELIS**, Defendant-Appellant,

v.

**STATE** of Indiana, Plaintiff-Appellee.

No. 3–783A222.

Court of Appeals of Indiana,
Third District.

Aug. 15, 1983.

---

Stephen R. Bowers, Elkhart, J.J. Paul, III, James H. Voyles, Jr., Indianapolis, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Latriealle Wheat, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

HOFFMAN, Presiding Judge.

On November 24, 1982, appellant Robert Sherelis was arrested and charged by information with four counts of delivery of a controlled narcotic substance, a class A felony, and one count of delivery of a controlled narcotic substance, a class B felony. Bail bond was set in the amount of $1,000,000.

On November 29, 1982, Sherelis filed his "AFFIDAVIT AND MOTION TO REDUCE BAIL." Sherelis thereby placed before the trial court evidence of his stable family background, successful employment and financial status, close connections with the Elkhart community, lack of a criminal record, honorable discharge from the U.S. Army, and distinguished educational achievements.

A hearing was held on this motion on December 2, 1982. Arguments were made, but the State made no attempt to present any evidence or to controvert Sherelis' affidavit. The trial court took the matter under advisement, pending a report from the pre-trial release officer. This report was filed on December 9, 1982, and showed that the defendant:

1. Resides at his present home with his wife and daughter, where he has lived for six and one-half years;

2. Has three children, two of whom are in college in Indiana, and one of whom is in high school in Elkhart;

3. Has been married for twenty-five years and is buying his home, mortgaged through a local bank;

4. Has been a resident of Elkhart County for twelve and one-half years;

5. Holds a Masters Degree in Biophysics and has completed work toward a Ph.D.;

6. Is Chairman of the Board and fifty percent (50%) shareholder in Geocel Corporation, located in Elkhart;

7. Has no prior criminal history; and that he

8. Has no assets outside the Elkhart area.

Those assets which are available to him include equity in a home worth approximately $160,000–$180,000, a third interest in a Piper Cub airplane being financed through a local bank, and stock in his corporation worth approximately $800,000 but which is subject to buy-sell agreements, in accordance with which the stock may not be encumbered or pledged.

Carefully assessing these facts, the pre-trial release officer recommended that:

"Due to the defendant's length of residence in the Elkhart area, family/community ties, business holdings in the Elkhart area, and lack of criminal record or history of failure to appear, it is felt that the bond should be reduced in accordance with the bond schedule. It is further recommended that the defendant surrender his passport to provide additional security against flight."

However, the trial court was unpersuaded by this recommendation and ruled as follows:

"The Court having heretofore taken under advisement the Defendant's Motion for Reduction of Bond and reviewed the Pre-Trial Release Report heretofore filed now finds that the bond set in the sum of $1,000,000.00 is reasonable considering the nature and the gravity of the offense and considering that there are four (4) counts of Delivery of A Controlled Narcotic Substance, a Class A felony, filed against the defendant, and one (1) count of Delivery of A Controlled Narcotic Substance, a Class B felony, filed against the Defendant and that the maximum possible penalty should the Defendant be found guilty would be 220 years and that these factors are relevant to the risk of non-appearance, and that the Defendant has adequate finances to post the bond and that it is not punitive in nature. The Court now denies Defendant's Motion for Reduction of Bond."

Sherelis now appeals this ruling and raises one basic issue for review: whether the trial court abused its discretion when it failed to reduce bail that is clearly excessive.

The Indiana Constitution provides for bail as follows:

"Offenses, other than murder or treason, shall be bailable by sufficient sureties. Murder or treason shall not be bailable, when the proof is evident, or the presumption strong."

Art. 1, § 17, Const. of Indiana.

Not only is bail available, but it is subject to the following limitations:

"Excessive bail shall not be required. Excessive fines shall not be imposed. Cruel and unusual punishments shall not be inflicted. All penalties shall be proportioned to the nature of the offense."

Art. 1, § 16, Const. of Indiana.

■ It has long been recognized that the right to freedom by bail pending trial is interrelated to the Anglo-Saxon doctrine that one accused is presumed innocent *until* his guilt is proven beyond a reasonable doubt. *Stack v. Boyle,* (1951) 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3; *Hobbs v. Lindsey, Sheriff etc.,* (1959) 240 Ind. 74, 162 N.E.2d 85. Because an accused is presumed innocent, pre-trial incarceration should not serve punitive purposes. Instead, pre-trial bail allows an accused the opportunity to properly prepare his defense at freedom, while it insures his presence at trial. It necessarily follows that once bail is made available, the amount set shall not be excessive, as this constitutes a denial of that right altogether. *Hobbs, supra.*

■ Bail is *excessive* where the amount set represents a figure higher than that reasonably calculated to assure the accused party's presence at trial. *Stack, supra; Hobbs, supra.* The Indiana Bail statutes have codified the facts to be accounted for in determining whether bail is excessive:

"Amount of bail—Entry of order—Indorsement on warrant in lieu of order—Facts Relevant to risk of nonappearance.—

\*　　\*　　\*　　\*　　\*　　\*

(b) Bail may not be set higher than that amount reasonably required to assure the defendant's appearance in court. In setting and accepting an amount of bail, the judicial officer shall take into account all facts relevant to the risk of nonappearance, including:

(1) The length and character of the defendant's residence in the community;

(2) The defendant's employment status and history and his ability to give bail;

(3) The defendant's family ties and relationships;

(4) The defendant's character, reputation, habits, and mental condition;

(5) The defendant's criminal or juvenile record, insofar as it demonstrates instability and a disdain for the court's authority to bring him to trial;

(6) The defendant's previous record in not responding to court appearances when required or with respect to flight to avoid criminal prosecution;

(7) The nature and gravity of the offense and the potential penalty faced, insofar as these factors are relevant to the risk of nonappearance;

(8) The source of funds or property to be used to post bail or to pay a premium, insofar as it affects the risk of nonappearance; and

(9) Any other factors, including any evidence of instability and a disdain for authority, which might indicate that the defendant might not recognize and adhere to the authority of the court to bring him to trial."

Ind.Code § 35–33–8–4 (1982 Burns Supp.).

Applying the facts in the record to the above conditions, it becomes apparent that the $1,000,000 bail set by the trial court is excessive. Sherelis was a long-established resident of Elkhart with strong family and community contacts. His employment status indicates that he has substantial capital invested in a closely held corporation, but this interest cannot be readily reduced to cash of any amount. The record indicates that Sherelis has a fine reputation in the community and is without any previous criminal record. In general, there is little evidence to indicate that Sherelis would not recognize and adhere to the authority of the court to bring him to trial. The only factor which the trial court relied upon was that the nature and gravity of the offenses indicate a strong likelihood that Sherelis will not appear for trial. This factor alone is insufficient to rebut the overwhelming evidence presented by Sherelis, which indicates a strong likelihood of appearance. Even the pre-trial release officer indicated that the $1,000,000 bail should be reduced.

Instead of disputing the facts brought to the trial court's attention during the hearing, the State now attempts to challenge the verification of Sherelis' affidavit. Because timely objection was not made at the time this document was offered, this issue is deemed waived. *Pounds v. State,* (1983) Ind., 443 N.E.2d 1193; *Bray v. State,* (1982) Ind., 430 N.E.2d 1162. Even absent this waiver, the evidence included in the pre-trial release officer's report sufficiently indicates that the trial court abused its discretion by setting an excessive amount for bail.

Under the evidence in the record the denial of Sherelis' motion for reduction of bail was erroneously overruled.

Therefore, the trial court's ruling is reversed, and the case is remanded for the purpose of fixing reasonable bond.

Reversed and remanded.

STATON and GARRARD, JJ., concur.