STATE of Indiana ex rel. Michael
WILLIAMS, Relator,

v.

Thomas L. RYAN, Judge of the Allen
Circuit Court, Respondent.

No. 1285S525.

Supreme Court of Indiana.

April 8, 1986.

Terry N. Hursh, New Haven, for relator.

Linley E. Pearson, Atty. Gen., and David Michael Wallman, Deputy Atty. Gen., Indianapolis, for respondent.

ORIGINAL ACTION

GIVAN, Chief Justice.

Relator brings this original action challenging the respondent court requirements concerning the posting of a cash deposit bond for release pending prosecution.

Relator stands charged in the respondent court with the crime of Battery, a Class C felony. The respondent court set bond at $5,000, a figure which relator does not challenge; however, the respondent judge has placed three conditions on the posting of the statutory ten percent cash bail. *See* Ind.Code § 35-33-8-3(2). The conditions are: 1) the bond be posted in the name of the defendant; 2) the bond be considered a personal asset of the defendant; and 3) the bond be available for payment of court costs, fine, restitution and necessary attorney fees. It is relator's position that the conditions placed by the respondent judge are a violation of the above statute and that they are a violation of his right to bail.

We find nothing in the statute prohibiting the respondent judge from requiring that the bond be posted in the name of the defendant or that the bond be considered a personal asset of the defendant. Ind.Code § 35-33-8-3(7) provides: "Impose any other reasonable restrictions designed to assure the defendant's presence in court." There can be little doubt that requiring the defendant to post his own money rather than the money of a friend might very well be an additional assurance that he will appear for trial. The requirement by the respondent court that the bond be available for payment of costs, fine, restitution and necessary attorney fees in no way impedes the defendant in his ability to post bond.

The amount of money necessary to effect a cash bond posting is ten percent of the

original bond. The judge's restrictions do not impinge the State's right to retain ten percent of the amount posted as an administrative fee. The requirement of the respondent court simply declares that the remaining cash posted, which is an asset of the defendant, be treated as such and that it be subjected to the debts of the defendant incurred as a result of the litigation. The action of the trial court in this regard is tantamount to the placing of a lien upon the assets of a litigant to secure payment of just debts.

We hold the conditions placed on the ten percent cash bond by the respondent judge in no way violate the statute or the constitution. The conditions are entirely reasonable and are in no way an impingement upon the rights of persons charged with a crime in that court.

The petition for a writ is denied.

PIVARNIK and DICKSON, JJ., concur.

SHEPARD, J., dissents with separate opinion in which DEBRULER, J., concurs.

SHEPARD, Justice, dissenting

I find myself unable to join in the majority's decision to endorse the imposition of conditions on bail which have nothing to do with reappearance by the defendant in court, although I have great sympathy with the apparent objective.

The sections of the Indiana Constitution regulating bail for persons charged with crimes have remained unchanged since 1851:

> Excessive bail shall not be required. Excessive fines shall not be imposed. Cruel and unusual punishment shall not be inflicted. All penalties shall be proportioned to the nature of the offense.

Article 1, § 16

> Offenses, other than murder or treason, shall be bailable by sufficient sureties. Murder or treason shall not be bailable, when the proof is evident or the presumption strong.

Article 1, § 17

It appears that our courts have taken a consistent view of the purposes of bail under those sections:

> The objective of bail prior to trial is to insure "the presence of the accused when required without the hardship of incarceration before guilt has been proved and while the presumption of innocence is to be given effect." *United States ex rel. Rubinstein v. Mulcahy* (2d Cir.1946), 155 F.2d 1002, 1004.

*Hobbs v. Lindsey, Sheriff* (1959), 240 Ind. 74, 78, 162 N.E.2d 85, 88.

On occasion, this Court has stated the purposes of incarceration and the opportunity for bail even more forcefully:

> The law confines the use of pre-trial detention to only one end: namely, that the criminal defendant be present for trial. This limitation is implicit in the concept of bail. Art. 1, § 17, Indiana Constitution.

*Brown v. State* (1975), 262 Ind. 629, 636, 322 N.E.2d 708, 712.

It is against this background that one should consider the order admitting Williams to bond. Initially, the trial judge permitted Williams to make bond on condition that the bond: (1) be posted in his name, (2) be considered a personal asset of the defendant, and (3) be available for payment of court costs, fine, restitution and necessary attorney fees. After Williams filed a motion seeking to be admitted to bail without conditions, the trial court amended its earlier order by deleting the third set of conditions.

The majority notes that a trial court may "impose any other reasonable restrictions designed to assure the defendant's presence in court", Ind.Code § 35–33–8–3(7), and concludes that the trial judge might well have decided that it was more likely that Williams would show up in court if he were required to post his own money rather than someone else's money.

Such a surmise might explain the reason for imposing the second condition in some cases, but the record here indicates that the trial judge knew that Williams had no assets with which to post bond and that the

only apparent resource for same was his family. The bail commissioner had so reported. That being the state of the record, one has to assume that the trial judge had some other object in requiring the defendant to assert that the funds were his. I presume that the object was to carry out the third part of the original order by forcing the defendant to claim the money was his personal asset whether it was or not. Once the defendant had told the court the cash was his, he would hardly be in a position later to resist its use for restitution or attorneys fees.

Hence, I am led to the question of whether the third part of the original order is permitted under the code and constitution. Whether this question was properly before this Court in the first place is doubtful, but the majority has decided it anyway, and today's decision will likely be cited in the future for the proposition that such conditions are proper, notwithstanding the fact that it is *dicta.*

Appearing for the respondent, the Attorney General asserts that the trial court is concerned with potential abuse of the right to pauper counsel by allegedly indigent defendants. This is a concern well founded in the daily flow of business in criminal courts. Hundreds of times each week, defendants appear and request the appointment of public counsel, claiming indigency; many of these same paupers later post cash bond in order to get out of jail pending trial. Some of these same individuals later plead guilty and resist paying fines and restitution in the basis of their poverty. A defendant who manages to come up with cash to get sprung soon re-emerges as the indigent without means to make restitution to the victims of his crime. Attempting to differentiate the genuine pauper from the huckster is a trying matter.

Ultimately, the trial judge has at his disposal a number of ways in which he can raise the likelihood that the victims of crime or the public body which has provided counsel for the defendant can be made whole. Among these is his power to impose conditions on probation. Ind.Code § 35–38–2–2. He can also decline to accept a plea agreement offered him by the parties unless there appears a ready method by which fines or restitution will be paid (such as through the use of bond proceeds). Ind.Code § 35–35–3–3. Certainly, when the bond money actually is a personal asset of the defendant, the trial court has wide discretion in ordering its disposition.

With tools such as these, I am hard pressed to see why this Court need alter its long-standing view of the purpose of bail. Bail is to assure the presence of the defendant in court, not to assure that in the event he is found guilty he can pay the fine. Requiring him to stay in jail unless he can provide some security for costs and fines, restitution, and attorneys fees is to strip him of the presumption of innocence. "The object of bail very definitely is not to effect punishment in advance of conviction." *Hobbs, supra,* 240 Ind. at 78, 162 N.E.2d 85.

For these reasons, I would grant the writ.

DeBRULER, J., concurs.